# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ACCESS LIMOUSINE SERVICE, INC.,     *
                                       *

        Plaintiff,                     *

                                            *

        v.                          *        Case No.: 8:15-cv-03724-TDC

                                            *

SERVICE INSURANCE AGENCY, LLC,     *
*et al.*,                                        *

                                            *

        Defendants.                   *

## DEFENDANTS' EXPERT WITNESS DISCLOSURES & REPORTS

The Defendants, Service Insurance Agency, LLC and Timothy O'Bryan, by and through undersigned counsel and pursuant to the Rules and Orders of this Honorable Court, hereby discloses the following witnesses Defendants may use at trial to present evidence under FRE 702, 703, or 705:

1.     Barbara "Chris" Christian, CIC, RPLU
        7555 Ruel McKnight Road
        Milton, TN 37118

2.     Richard A. Intner
        25 Crossroads Drive
        Suite 402
        Owings Mills, MD 21117

The witnesses identified above are expected to testify in accordance with the accompanying respective written reports. As no reports have been received from Plaintiff as of the date of these Disclosures, Defendants reserve the right to supplement or amend these disclosures.

Respectfully submitted,

JORDAN COYNE LLP


By: _/ s / Padraic K. Keane_
      Padraic K. Keane
      10509 Judicial Drive; Suite 200
      Fairfax, VA  22030-5117
      Telephone:  (703) 246-0905
      Fax:  (703) 591-3673
      E-mail:  jmay@jocs-law.com

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing served via e-mail and first-class

mail, postage prepaid, on this 20th day of June, 2016 to:

      Rand L. Gelber, Esquire
      Suite 800
      One Church Circle
      Rockville, MD  20850
      *Counsel for Plaintiff*


      _/ s / Padraic K. Keane_
      Padraic K. Keane

# EXPERT REPORT OF BARBARA "CHRIS" CHRISTIAN PURSUANT TO

# FEDERAL RULE OF CIVIL PROCEDURE 26(A)(2)(B)

## ACCESS LIMOUSINE SERVICE, INC., V. SERVICE INSURANCE AGENCY, LLC

### CASE NUMBER 8:15-cv-03724-TDC

United States District Court for the District of Maryland

TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND........................................................................................................3

SUMMARY OF CONCLUSIONS.............................................................................................................4

CONCLUSION 1: STANDARD OF CARE MET REGARDING NOTICE OF NONRENEWAL ...................................5

CONCLUSION 2: REASONABLE DILIGENCE AND CARE EXERCISED IN ATTEMPTING TO PROCURE TERMS...................................................................................................................................6

APPENDIX A: CURRICULUM VITAE

APPENDIX B: LIST OF PUBLICATIONS IN LAST 10 YEARS

APPENDIX C: STATEMENT OF COMPENSATION

## INTRODUCTION AND BACKGROUND

My name is Barbara "Chris" Christian, and I am a wholesale insurance broker. I have been assisting retail agents in the placement of various lines of coverage since 1998, in both admitted and non-admitted markets.

I am employed by US Risk Brokers, a wholesale broker and Managing General Underwriter, as Vice President and Senior Broker, and have been with the company since November 2005. I am also the publisher of www.pltidbits.com, a website dedicated to information regarding professional and management liability insurance.

I hold the professional designations of Certified Insurance Counselor, and Registered Professional Liability Underwriter, as well as insurance licenses in California, Arizona and Tennessee.

I am a frequent industry author and speaker regarding professional and management liability lines of exposure and coverage.

Appendix A contains my curriculum vitae.

Appendix B contains a list of all publications in the last 10 years, which includes periodic content sent to my mailing list.

Appendix C contains my statement of compensation.

Appendix D contains a list of exhibits.

I have not testified or been deposed as an expert witness in any litigation in the past four years.

My rate sheet is attached, for statement of compensation. Hours logged to date are 13.25. If litigation proceeds, significantly more hours will be required.

Service Insurance Agency's counsel requested that I provide expert analysis and opinion regarding certain issues raised by Access Limousine. Specifically, I have been asked to opine as to Service Insurance Agency met the standard of care with regard to notice of the nonrenewal of Access Limousine's insurance, and with regard to efforts undertaken to seek replacement terms.

I have relied upon documentation in the Access Limousine file and on Maryland state law regarding notices of nonrenewal to determine whether Access was provided adequate notice of nonrenewal. I have relied upon the contents of Service Insurance's files for Access Limousine, and responses in Service Insurance's interrogatories to determine the scope of search for renewal terms and subsequent communication.

In addition to these resources, I have drawn upon my years of experience in placing coverage for both standard and distressed insureds, and in processing and managing non-renewals.

SUMMARY OF CONCLUSIONS

I have reached the following conclusions in my analysis:

1. Access Limousine was provided with adequate notice of nonrenewal of its coverage, in accordance with applicable law, such notice to be provided by the carrier. There is no obligation for the broker to provide notice.

2. Service Insurance Agency exercised reasonable diligence and care in attempting to procure terms for Access Limousine, and kept Access apprised of their progress and difficulties in obtaining terms.

**CONCLUSION 1: SERVICE INSURANCE AGENCY MET THE APPLICABLE STANDARD OF CARE REGARDING PROVISION OF NOTICE OF NON-RENEWAL TO ACCESS LIMOUSINE, INC.**

Maryland law requires that if coverage under an admitted insurer is to be non-renewed, the **insurer** must send notice within 45 days of such non-renewal. There is no requirement for the broker to provide notice (see Exhibit A, Maryland Code and Court Rules section 27-613).

CNA mailed to Access Limousine's address the required notice of non-renewal on June 24th, 2013, reflecting non-renewal effective August 12, 2013 (50 days in advance of the date of non-renewal). (See Exhibit B.)

Service Insurance Agency had no obligation to take any action whatsoever. However, in an email dated July 11, 2013, Service Insurance advised Access Limousine that coverage was being non-renewed. (See Exhibit C.)

Because the responsibility for notice of non-renewal falls on the shoulders of the carrier, there is very little, if anything, a broker must do to meet the standard of care regarding such non-renewal notices.

There was nothing Service Insurance was required or expected to do to facilitate Access's knowledge of the impending non-renewal. Accordingly, Service Insurance met the applicable standard of care with regard to the notice of non-renewal.

## CONCLUSION 2: SERVICE INSURANCE AGENCY EXERCISED REASONABLE DILIGENCE AND CARE IN ITS ATTEMPT TO FIND REPLACEMENT COVERAGE FOR ACCESS LIMOUSINE

Service Insurance exercised reasonable diligence and care in attempting to procure renewal terms and kept Access Limousine apprised of their progress and declinations, clearly indicating there were issues with finding replacement coverage.

Service Insurance approached several markets with Access's renewal submission, in an attempt to procure replacement terms for the non-renewed policy.

Several carriers declined to provide terms due to Access's SAFER ratings. Access indicated those ratings would be improved in July, but did not provide updated numbers to Service for inclusion in the marketing efforts. Carriers who had already declined could not be re-approached with more favorable information.

Service Insurance submitted to or inquired of several markets, including: KF&B, RLI, 5 Star Specialty Programs, Lancer Insurance, Western Experts in Transportation, and W. F. Clayton & Associates, LLC. This demonstrates diligence and care in seeking replacement terms.

It is not necessary for a broker to approach all existing markets that offer an insurance product or coverage for a specific class of business in order to exercise reasonable diligence. A broker may not be able to approach certain markets due to lack of access. A broker may not approach some markets due to the insured not being a match for the known underwriting appetite or criteria of the market. A broker may not approach markets due to unfamiliarity with those markets. Approaching a half dozen or more markets is a significant search.

Through a combination of email and phone calls, Service informed Access of the scope of the marketing efforts to find replacement terms, and also kept Access apprised of the results of the marketing efforts.

As long as the broker has exercised reasonable diligence and care in seeking terms in accordance with its client's request, the broker has met the standard of care.

Signature

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Signed this 20th day of June, 2016, in Milton, TN.

_____

Barbara Christian

## Cc

Chris Christian, CIC, RPLU

Information for Insurance Professionals In the Know

### Curriculum Vitae

Barbara "Chris" Christian
7555 Ruel McKnight Road
Milton, TN 37118

760-415-4213 (cell)
chris@pltidbits.com

**Summary:**

Chris Christian is a veteran of the insurance industry, specializing in professional liability exposures and coverages. In addition to her daily business of broking professional liability risks, Chris is a frequent industry author, speaker and instructor, and also offers consulting, risk management and expert witness services.

**Relevant Work Experience:**

- 2005 – Present: Vice President/Senior Broker at US Risk. Development of professional liability business, engagement of agents and markets, risk analysis, coverage analysis. Product development, management strategy.
- 1997-2005: Senior Vice President at London American General Agency. Developed and managed underwriting facilities for professional lines. Coverholder for Lloyds writing managed care E&O and D&O. Managed professional liability and property/casualty units. Involved in all aspects of agency operations.
- 1990 – 1997: Operations Manager/Junior Underwriter at RLI Corp. Launched San Diego branch office, maintained branch operations. Underwrote nonprofit and healthcare directors and officers liability risks. Involved in all aspects of branch operations, product development and filings, reinsurance audits and reports, and regulatory compliance.
- 1985 – 1990: Business and financial analyst, GAF Insurance Services. Involved in all aspects of agency operations including accounting, automation, servicing, production, and personnel.

**Speaking/Lecturing:**

- Provided 12 hours of continuing education instruction on Executive Risk for the Insurors of Missouri
- Guest Instructor at MTSU 2009 (Subject: Professional Liability)
- Speaker at MTSU High School Guidance Counselor event June 2009 (Subject: Insurance Product Development and Market Expansion)
- Instructor for PIA of TN Continuing Education 2008 (Subject: Agents Errors & Omissions exposures, Employment Practices Liability)
- Instructor for PIA of TN Education Expo (Subject: Technology Risks, Privacy Liability, Private/Non-Profit D&O)

# Cc

- Executive Risk Ruble Seminars for the National Alliance 2008- 2012 (Subject: Privacy Liability/Network Security/Cyberliability)

- Graduate, MEGA, and Cyber Risk Ruble Seminars for the National Alliance 2013 – present (Subject: Privacy Liability/Network Security/Cyberliability)
- Mega Ruble Seminar for National Alliance 2010 – (Subject: Effective Use of Wholesalers, London and Bermuda)
- Insuring Healthcare Providers Ruble Seminar for the National Alliance 1999 - 2007 (Subject: Healthcare D&O, Managed Care E&O, Miscellaneous Medical, Complex and Distressed Risks)
- Professional Liability Underwriting Society (PLUS) – PRS Symposium – moderated panel (Management Liability Issues for Private and Non-Profit Organizations).
- Professional Liability Underwriting Society (PLUS) International Conference 2008: Panel Participant (Miscellaneous E&O: Does any Business Not Need it?)
- PLUS Medical Professional Symposium 2007: Moderator (Anti-aging and Miscellaneous Medical Exposures)
- PLUS University Instructor 2009 and 2010: (Private/Nonprofit D&O; Cyberliability)
- PLUS University Instructor 2008: (Private/Nonprofit D&O)
- Insurance Journal Webcast 2010: Myths, Lies & Legends Surrounding Kidnap and Ransom Coverages
- Insurance Journal Webcasts 2011: Myths, Lies & Legends Surrounding Kidnap and Ransom Coverages; Identifying Professional Liability Exposures; How to Read a Professional Liability Policy; Matching Professional Liability Coverages to Insureds' Exposures
- Insurance Journal Webcasts 2012: Myths, Lies & Legends Surrounding Kidnap and Ransom Coverages; Errors and Omissions Exposures and Coverages for Staffing Firms; State of the Art Employment Practices Liability Coverage
- Insurance Journal Webcasts 2013: Additional Insureds in Professional Liability
- Moderated Panel "What's the Best Cyber Policy" at PLUS PRS Symposium, April 2014
- Keynote speaker at NAPEO Risk Management Workshop February 2015 – Cyber Exposures and your PEO
- Faculty member for National Alliance currently teaching three four-hour seminars:
  - o Cyber Exposures - Resistance is Futile
  - o Is Your Insured Drive a State-of-the-Art EPL Policy?
  - o Peeking Behind the Curtain – What Makes Professional Liability Tick?
- Webinar provider for National Alliance teaching EPL, cyber, technology and other topics
- Panelist on PLUS Conference session regarding cyber exposures and solutions for small to midsize businesses, November 2015

**Publications**

## Cc

Chris Christian, CIC, RPLU

Information for Insurance Professionals In the Know

- American Agent and Broker 2003 (D&O and EPL)
- Subject Matter Expert for PLUS Curriculum Module: Private/Nonprofit D&O
- Orange County Bar Association Workshop Materials: How to evaluate your Lawyers Professional Liability policy; Executive Protection Exposures for Law Firms
- Weekly Knowledge Knuggets – informational installments predominantly regarding exposure and coverage issues
- www.pltidbits.com blog – Top 50 Lexis-Nexis Insurance Law Blogs
- White papers on various topics pertaining to professional liability
- IRMI Risk Tip – Preserve coverage continuity with claims-made policies, 8/25/10
- Resources magazine (published by the National Alliance) –
    o Spring 2012 issue; "Finding Your Way Through the Social Media Swamp";
    o Spring 2014 issue: "Contractual Obligation to Notify: Is it Covered?"
    o Summer 2015 issue: "ABCs of D&O"
    o Summer 2016 issue: "Wide, Wide World of Executive Liability"
- Author of the published book "Cyber Insurance Basics" available on Kindle and forthcoming on iTunes
- Author of the forthcoming book "Is Your Insured Driving a State-of-the-Art EPL Policy?"
- Interview regarding cyber marketplace for Insurance Journal April 2014
- Op-Ed in Insurance Journal regarding D&O marketplace May 2014

**Industry Involvement, Awards and Designations***

PLUS Board of Trustees 2008 – 2013
PLUS Southeast Chapter Chair 2007 – 2008
PLUS Southeast Chapter Steering Committee 2006 - 2007
PLUS Southern California Chapter Steering Committee 1998 – 2005
PLUS RPLU Committee 2004 – 2008
PLUS Professional Development Committee (fka RPLU Committee) Co-Chair 2008 - 2012
PLUS Event/Content Committee 2006 - 2009
PIA of TN Education Committee 2006 - 2010
PIA of TN Government Affairs Committee 2009 – 2010
MTSU Insurance Liaison Committee
Big I of San Diego – Vendor Chair/I-Day Chair 1988 – 1991
Big I of California – Convention Committee - 1987
PIA of TN Company Representative of the Year - 2009
RPLU – Registered Professional Liability Underwriter designation
CIC – Certified Insurance Counselor designation

*some dates are approximate

# APPENDIX A

**Cc**

Chris Christian, CIC, RPLU

Information for Insurance Professionals In the Know

# APPENDIX B

**Publications**

- IRMI Risk Tip – Preserve coverage continuity with claims-made policies, 8/25/10
- Resources magazine (published by the National Alliance)
  - Spring 2012 issue; "Finding Your Way Through the Social Media Swamp"
  - Spring 2014 issue: "Contractual Obligation to Notify: Is it Covered?"
  - Summer 2015 issue: "ABCs of D&O"
  - Summer 2016 issue: "Wide, Wide World of Executive Liability"
- "Cyber Insurance Basics", released on Kindle November 2014
- Insurance Journal Op-Ed regarding D&O marketplace May 2014

**Knowledge Knuggets:**

Timing is Everything - Part 2 3/18/16

Timing is Everything 3/4/16

Reputational Harm - A Cyber Insurance Frontier 2/4/16

A Record by any other name...Still needs to be counted 1/28/16

Crime, Crime, Everywhere Crime...8/6/15

Two Timely Headlines 7/30/15

Why Does Your Insured Need D&O? (Part 4) 7/23/15

Why Does Your Insured Need D&O? (Part 3) 7/17/15

Why Does Your Insured Need D&O? (Part 2) 5/29/15

Why Does Your Insured Need D&O? 5/15/15

ABCs in D&O 3/20/15

Cyber Crime - Can Your Policy Handle It? 2/19/15

Gutless D&O Policies and Yellow-Bellied Exclusions 2/13/15

Privacy on EPL Policies - Enhancement? Or Restriction? 2/6/15

"Small" does not equal "Easy" 1/23/15

Avoiding Late Claim Reporting 12/19/14

Should Individual Insureds be Scheduled on a D&O Policy? 12/12/14

an Early Kristmas Knugget For You 12/4/14

Classes of Business with Special EPL Needs 11/21/14

A Small Knugget and a BIG Request 11/14/14

How does "Most Favorable Jurisdiction" wording work? 10/24/14

# APPENDIX B

"Optional" Duty to Defend Unmasked! 10/16/14

Is a Cyber Policy a Panacaea? 10/9/14

The Nexus - part 2 10/2/14

The Nexus - Where EPL and Cyber Meet 9/25/14

All Aboard! Freight Forwarders E&O 9/5/14

What is Third Party Coverage, Really? Part 3 8/28/14

What is Third Party Coverage, Really? Part 2 8/21/14

What is Third Party Coverage, Really? 8/14/14

What does a Technology E&O policy do? 8/7/14

EPL - Things that Make You Go "Hmmm..." 7/25/14

Technology E&O Traps and Trip-Ups 7/18/14

Independents' Day! Problems with Independent Contractors 7/3/14

Property Owners' D&O/E&O Coverages 6/20/14

State of the Cyber and D&O Markets 6/5/14

Property Owners' D&O/E&O Exposures 5/30/14

An EPL Time Warp 5/23/14

Property Owners' Privacy Perils 5/9/14

Tenant Discrimination Liability Tulips, part 2 5/2/14

Tiptoeing through Tenant Discrimination Liability Tulips 4/11/14

Sure,The Doc Has Coverage, But Will It Help Your Insured? 3/28/14

Owned Property Management Coverage 3/21/14

Property Owners' Exposures -- Property Management 3/14/14

The Latest on GL Policies and Coverage for Data Breaches 3/7/14

What Does the Target Breach Mean to Your Insureds? 2/21/14

Can a Professional Render Services as Anything Less? Pt 2 2/13/14

Can a Professional Ever Render Services as Anything Less? 2/16/14

Change of Control - the Danger's in the Details (Part 2) 1/30/14

Contractual Obligations to Notify Part 2 1/16/14

Contractual Obligations to Notify 1/9/14

# APPENDIX B

Vagaries of Vicarious Liability, part II 12/19/13

Vagaries of Vicarious Liability 12/12/13

Half Baked Info + Insureds = Danger 9/26/13

Is One Quote as Good as Another? 9/19/13

Who's Your Fiduciary? 9/12/13

Fiduciary v. Fidelity -- Coverage Smackdown! 9/6/13

Fiduciary, Fiduciary - Who's Got the Fiduciary? 8/29/13

An Insured by any other Name -- May not be an Insured 8/22/13

The Trouble with Interns 8/8/13

When is a Contractor a "Professional" 5/10/13

Additional Insureds = Additional Issues, part 4 4/18/13

Additional Insureds = Additional Issues, part 3 3/21/13

Additional Insureds = Additional Issues, part 2 3/14/13

Additional Insureds = Additional Issues 3/1/13

Wage & Hour Supplementals and Exempt Employees 2/21/13

Can These Insureds Live on the Same Policy? 2/14/13

Inexplicable Exclusions, last installment 2/7/13

Inexplicable Exclusions, cont'd 1/31/13

Inexplicable Exclusions 1/28/13

"Arising From" Rears its Ugly Head Again 1/18/13

Web-Media Coverage v. the CGL form, part 2 12/21/12

Web-Media Coverage v. the CGL form 4/2/12

Volunteers and Independent Contractors - 3/25/12

2+2=2? How to count "employees" for EPL 3/15/12

The Quickest, Easiest Way to add a New Entity 3/9/12

Excess Limits in PL - part 2 3/1/12

"I'll raise you one" 2/24/12

EPL - Still crazy after all these years 2/9/12

# APPENDIX B

ERPs, part 2 2/2/12

What you Need to Know about ERPs 1/27/12

When Insureds Collide -- Part 4 1/19/12

When Insureds Collide -- Part 3 1/12/12

When Insureds Collide, Part 2 12/16/11

When Insureds Collide 12/9/11

Maybe one little loose thread...12/1/11

No Loose Ends Here....11/18/11

To Report?  Or not to Report? 11/10/11

Timing is Everything 11/3/11

Is there ever "Too Much Information"? 10/27/11

A Disturbing Trend, cont'd. 10/20/11

A Disturbing Trend in Privacy Liability Claims 10/13/11

Is Going Granular Good? - Part 3 10/6/11

Is Going Granular Good? - Part 2 9/29/11

Is Going Granular Good? 9/22/11

The Named Insured - Covered?  Or Not? 9/15/11

Contractors' Professional Liability Exposures 9/8/11

Warranty, Warranty -- Part 3 9/1/11

Warranty, Warranty -- Part 2 8/25/11

Warranty, Warranty, Who's Got the Warranty? 8/18/11

"Services for others for a fee" - Wolf in Sheep's 8/11/11

Kloud Komputing Hazards 8/4/11

Privacy Liability and the GL policy 7/28/11

I don't think that word means what you think it means 7/21/11

When does a GL policy NOT cover BI/PD? 7/14/11

The Marketplace - Firming?  Or still slush? 7/7/11

The Social Media Swamp, part 4 6/30/11

The Social Media Swamp, part 3 6/23/11

# APPENDIX B

The Social Media Swamp, part 2 6/16/11

The Social Media Swamp 6/9/11

Contracts - how much info is "enough"? 6/2/11

Accountants and BI/PD...Say What?!?!, part 2 5/26/11

Accountants and BI/PD...Say What?!?! 5/20/11

Location, location, location 5/12/11

Privacy Liability update - part 3 5/5/11

Privacy Liability update - part 2 4/28/11

Privacy Liability update 4/14/11

"For" BI/PD language in D&O policies 4/21/11

Fiduciaries and some little-known exposures 4/8/11

Fiduciary is Fiduciary is Fiduciary, right? 3/31/11

A Rather Chilling Court Decision 3/24/11

Service of Suit versus Claims Reporting 3/17/11

3rd party EPL v Abuse/Molestation 3/10/11

Trustees -- Types and Tips, Part 2 3/3/11

Trustees -- Types and Tips 2/24/11

Your Insureds' Contractual Requirements, part 2 2/17/11

Your Insureds' Contractual Requirements 2/10/11

Email and Nominal Knugget 2/3/11

Skeleton Submissions, Part 7 - Miscellaneous E&O 1/27/11

Skeleton Submissions, Part 6 - Tech cont'd 1/21/11

Skeleton Submissions, Part 5 - Tech/Cyber/Privacy 1/15/11

Skeleton Submissions, Part 4 - Healthcare 1/6/11

Skeleton Subs, Part 3 - A&E/Accountants/Attys 12/16/10

Skeleton Submissions Part 2 - Rating Basis 12/9/10

Skeleton Submissions 12/2/10

Identifying Contingent Exposures - Part 2 11/18/10

Identifying Contingent Exposures 11/11/10

# APPENDIX B

When is an Employed Lawyer not an Employed Lawyer? 11/4/10

The Dangers in Change of Control part 2 10/28/10

The Dangers in Change of Control 10/21/10

Exposures Ahead of the Curve -- Around the Bend 10/14/10

Exposures Ahead of the Curve 10/7/10

Inquiring minds want to know....9/30/10

When is Employee Dishonesty not Employee Dishonesty? - Part 2 9/23/10

When is Employee Dishonesty not Employee Dishonesty? 9/16/10

Misnomers Regarding Duty to Defend and other Policy Provisions 9/9/10

Title Agents v. Escrow Agents, part 2 9/2/10

Title Agents v. Escrow Agents 8/26/10

Claims made v. Claims made and reported 8/19/10

Contingent BI/PD in Real Estate Risks 8/12/10

One Ugly Face of the Contractual Breach Exclusion 8/5/10

You say "Broker"; I say "Banker" - 7/29/10

The Dastardly Duo - Non-Duty and Breach of Contract Excl 7/22/10

Buying and Selling - D&O opportunities 7/15/10

Independent Contractors -- Covered?  Part 2 7/8/10

Independent Contractors -- Covered?  Or Not Covered? 7/1/10

When is an Excess Policy not an Excess Policy? 6/24/10

Services Covered, revisited 6/17/10

What Services are Covered? 6/10/10

One Carrier or Two -- does it matter? 6/3/10

Good Healthcare D&O Part 4 5/27/10

Good Healthcare D&O Part 3 5/20/10

Good Healthcare D&O part 2 5/13/10

What does it take to write a good policy for Healthcare D&O? 5/6/10

Is it a Cat Fight?  Or is it a Legitimate Claim? 4/29/10

What's up with Run-off coverage? 4/22/10

# APPENDIX B

The Need for "Need By" Dates 4/15/10

Is Privacy Liability the next EPL? 4/8/10

It's Hammertime! 4/1/10

GL for PL? 3/25/10

EPL Prior Claim Quandary 3/19/10

K&R - Part 3 3/11/10

K&R - Part 2 3/4/10

K&R - the real "Executive Protection" coverage 2/25/10

Intellectual Property in A&E policies 2/18/10

Personal Injury in PL policies 2/11/10

Agents on Boards 2/4/10

Personal D&O coverage 1/28/10

Insureds Buying or Selling?  Time for D&O 1/21/10

Competing with State or Association programs 1/14/10

Quirks in the PL World 1/7/10

The Perils of "Arising From" wording 12/17/09

Let's talk about tech, Part 5 12/10/09

Let's talk about tech, Part 4 12/3/09

Let's talk about tech, Part 3 11/19/09

Let's talk about tech, Part 2 11/12/09

Let's talk about tech, baby..... 11/5/09

Online Quoting - Just one more thing...10/29/09

Online Quoting 10/22/09

D&O Policies and Regulatory Coverage 10/15/09

D&O policies for Professional Liability coverage? 10/8/09

Employed Lawyers - separate policy, or D&O endorsement? 10/1/09

D&O Subtleties - Side A versus Priority of Payments 9/24/09

Clouding the Issues - Cloud computing Part II 9/17/09

Clouding the Issues - Cloud computing and your insureds' exposures 9/10/

# APPENDIX B

Coming Late to the Dance 9/3/09

Management Liability Coverage Features 8/27/09

E&O extension on a GL policy - pros and cons 8/20/09

What's the Harm in Relying on a Hold Harmless? 8/13/09

The Ugly Side of Multi-year Policies 8/6/09

"For a Fee" wording leaving your insured bare, part 2 7/30/09

Is "For a Fee" wording leaving your insured bare? 7/23/09

Privacy Liability coverage variety, Part 4 7/16/09

Privacy Liability coverage variety, Part 3 7/9/09

Privacy Liability coverage variety, Part 2 7/2/09

Privacy Liability coverage variety 6/25/09

Exclusions - Stealth versus Apparent 6/18/09

One of the Many Faces of "Additional Insured" 6/11/09

Perils of Self-Management of Claims 6/4/09

Association Professional Liability 5/28/09

PEO EPL - Part 2 5/21/09

PEO EPL 5/14/09

Who's Your Insured, Really? 5/7/09

When is an EPL policy NOT an EPL policy? 4/30/09

Coverage for Independent Contractors - Why bother? 4/23/09

Coverage for Independent Contractors - Insurance Agents 4/16/09

Coverage for Independent Contractors 4/9/09

Contractual Liability exclusions 4/2/09

Tech Pitfall number 18 3/26/09

Work for affiliated entities 3/19/09

Subsidiaries versus affiliates 3/12/09

Wherefore art thou, Tail? 3/5/09

When is an Excess Policy not? 2/26/09

Who Let the Data Out? 2/19/09

# APPENDIX B

Defense Costs - In or Out? Part 2 2/12/09

Defense Costs - In or Out? 2/5/09

Spin offs and retros 1/29/09

P&P Lit, Retro and Continuity Dates 1/22/09

Staffing Companies - part 5 1/15/09

Staffing Companies - part 4 1/8/09

Staffing Companies - part3 12/18/08

Staffing Companies - part 2 12/11/08

Staffing Companies 12/5/08

Bankruptcy/Insolvency part 2 11/20/08

Bankruptcy/Insolvency 11/13/08

Real Estate Services part 4 - the Cats and Dogs 11/6/08

Real Estate Services part 3 - Mortgage bankers and brokers 10/30/08

Real Estate Services part 2 10/23/08

Real Estate Services 10/16/08

State of the Art EPL Policy - Part 2 10/9/08

State of the Art EPL Policy 10/2/08

Construction Industry E&O Opportunities - Inspectors 9/25/08

Construction Industry E&O Opportunities - Construction Mgmt 9/18/08

Construction Industry E&O Opportunities - Design/Build 9/11/08

Construction Industry E&O Opportunities 9/4/08

Selling Professional Liability Insurance, Part 2 8/28/08

Selling Professional Liability Insurance 8/21/08

Business Risk or Insurable Exposure? 8/14/08

What's in a Name, Part 4 8/7/08

What's in a Name, Part 3 7/31/08

What's in a Name? Part 2 7/24/08

What's in a Name? 7/17/08

# APPENDIX B

Tail Trials and Tribulations - Part 2 7/10/08

Extended Reporting Period -- Tail Trials and Tribulations 7/3/08

The Hammer Clause 6/26/08

Consent to Settle 6/19/08

Defense in Addition - Myth or Magic? 6/12/08

Professional Services Definition part 2 6/6/08

The importance of the Professional Services Definition 5/29/08

Unintended Consequences -- ERISA/Fiduciary Exclusion 5/22/08

Importance of Fiduciary Liability coverage 5/15/08

Contingent BI/PD - Part 2 5/8/08

Contingent BI/PD 5/1/08

First Party Tech Talk, Part 3 4/24/08

First Party Tech Talk, Part 2 4/17/08

First Party Tech Talk 4/10/08

Perils of P&P Lit 4/3/08

Incident Sensitivity part 3 3/27/08

Incident Sensitivity part 2 3/20/08

Incident sensitivity 3/13/08

IPISC 3/6/08

BRP Tech 2/28/08

ID Theft Basics 2/21/08

Sarbox and Nonprofits 2/5/08



Chris Christian, CIC, RPLU

Information for Insurance Professionals In the Know

Barbara "Chris" Christian
7555 Ruel McKnight Road
Milton, TN 37118

760-415-4213 (cell)
chris@pltidbits.com

## Expert Witness/Consulting Rates*

| Expert Witness Rates | |
|---|---|
| Review for Merit/Resulting Opinion: (minimum 2 hour charge, paid in advance) | $250/hour |
| Research/Review/Reports/Calls/Strategy: (minimum 15 minute increments | $350/hour |
| Deposition/Testimony including Travel Time: (minimum ½ day increments after first day) | $2,250/day |
| Expenses: (includes retrieving filings, and reference/research materials specific to the engagement) | As incurred |
| Minimum retainer/Minimum engagement fee: (Retainer to be applied to the last invoice generated for the engagement. Remaining balance, if any, refunded) | $3,500 |
| | |
| Consulting Rates | |
| Risk and Insurance Program Review/Analysis: (minimum 15 minute increments) | $325/hour |
| Carrier Negotiations/Insured Meetings | $350/hour |
| Market/Opportunity Analysis | $300/hour |
| Half-Day Rate for Meetings | Hourly rate * 3 |
| Full-Day rate for Meetings | Hourly rate *6 |

*Additional fees apply to rush work

APPENDIX D – LIST OF EXHIBITS

Exhibit A:  Maryland Code regarding notice of non-renewal requirements

Exhibit B:  Notice of nonrenewal sent to Access Limousine by the carrier

Exhibit C:  Email from Service Insurance to Access Limousine reiterating nonrenewal

Exhibit A

Home Table of Contents

### § 27-613. Notice of cancellation, nonrenewal, or reduction of coverage; private passenger motor...

West's Annotated Code of Maryland

Insurance

Effective: October 1, 2014

West's Annotated Code of Maryland
  Insurance (Refs & Annos)
    Title 27. Unfair Trade Practices and Other Prohibited Practices (Refs & Annos)
      Subtitle 6. Cancellations, Nonrenewals, Premium Increases, and Reductions in Coverage (Refs & Annos)

Effective: October 1, 2014

MD Code, Insurance, § 27-613

## § 27-613. Notice of cancellation, nonrenewal, or reduction of coverage; private passenger motor vehicle insurance

Currentness

**Application of section**

(a)(1) This section applies only to private passenger motor vehicle liability insurance.

(2) This section does not apply to the Maryland Automobile Insurance Fund.

**Cancellation, failure to renew policy, or reduction of coverage**

(b)(1) In accordance with this section, with respect to a policy of private passenger motor vehicle liability insurance or a binder of private passenger motor vehicle liability insurance, if the binder has been in effect for at least 45 days, issued in the State to any resident of the household of the named insured, an insurer may:

(i) cancel or fail to renew the policy or binder; or

(ii) reduce coverage under the policy.

(2) Notwithstanding paragraph (1) of this subsection, the requirements of this section do not apply if:

(i) the reduction in coverage described in paragraph (1)(ii) of this subsection is part of a general reduction in coverage approved by the Commissioner or satisfies the requirements of Title 19, Subtitle 5 of this article; or

(ii) the failure to renew the policy takes place under a plan of withdrawal that:

1. is approved by the Commissioner under § 27-606 of this subtitle; and

2. provides that each insured affected by the plan of withdrawal shall be sent by a first-class mail tracking method at least 45 days before the nonrenewal of the policy a written notice that states the date that the policy will be nonrenewed and that the nonrenewal is the result of the withdrawal of the insurer from the market.

(3) Notwithstanding paragraph (1) of this subsection, an insurer may not cancel a policy midterm except:

(i) when there exists:

1. a material misrepresentation or fraud in connection with the application, policy, or presentation of a claim;

2. a matter or issue related to the risk that constitutes a threat to public safety; or

3. a change in the condition of the risk that results in an increase in the hazard insured against;

(ii) for nonpayment of premium; or

(iii) due to the revocation or suspension of the driver's license or motor vehicle registration:

1. of the named insured or covered driver under the policy; and

2. for reasons related to the driving record of the named insured or covered driver.

**Notice requirements**

(c)(1) At least 45 days before the proposed effective date of the action, an insurer that intends to take an action subject to this section shall send written notice of its proposed action to the insured at the last known address of the insured:

    (i) for notice of cancellation or nonrenewal, by certified mail; and

    (ii) for all other notices of actions subject to this section, by a first-class mail tracking method.

(2) The notice must be in triplicate and on a form approved by the Commissioner.

(3) The notice must state in clear and specific terms:

    (i) the proposed action to be taken, including for a reduction in coverage, the type of coverage reduced and the extent of the reduction;

    (ii) the proposed effective date of the action;

    (iii) subject to paragraph (4) of this subsection, the actual reason of the insurer for proposing to take the action;

    (iv) if there is coupled with the notice an offer to continue or renew the policy in accordance with § 27-609 of this subtitle:

        1. the name of the individual or individuals to be excluded from coverage; and

        2. the premium amount if the policy is continued or renewed with the named individual or individuals excluded from coverage;

    (v) the right of the insured to replace the insurance through the Maryland Automobile Insurance Fund and the current address and telephone number of the Fund;

    (vi) the right of the insured to protest the proposed action of the insurer and request a hearing before the Commissioner on the proposed action by signing two copies of the notice and sending them to the Commissioner within 30 days after the mailing date of the notice;

    (vii) that if a protest is filed by the insured, the insurer must maintain the current insurance in effect until a final determination is made by the Commissioner, subject to the payment of any authorized premium due or becoming due before the determination; and

    (viii) that the Commissioner shall order the insurer to pay reasonable attorney's fees incurred by the insured for representation at the hearing if the Commissioner finds that:

        1. the actual reason for the proposed action is not stated in the notice or the proposed action is not in accordance with § 27-501 of this title, the insurer's filed rating plan, its underwriting standards, or the lawful terms and conditions of the policy related to a cancellation, nonrenewal, or reduction in coverage; and

        2. the insurer's conduct in maintaining or defending the proceeding was in bad faith or the insurer acted willfully in the absence of a bona fide dispute.

(4)(i) The insurer's statement of actual reason for proposing to take an action subject to this section must be clear and specific and include a brief statement of the basis for the action, including, at a minimum:

    1. if the action of the insurer is due wholly or partly to an accident:

        A. the name of the driver;

        B. the date of the accident; and

        C. if fault is a material factor for the insurer's action, a statement that the driver was at fault;

    2. if the action of the insurer is due wholly or partly to a violation of the Maryland Vehicle Law[1] or the vehicle laws of another state or territory of the United States:

        A. the name of the driver;

        B. the date of the violation; and

        C. a description of the violation;

    3. if the action of the insurer is due wholly or partly to the claims history of an insured, a description of each claim;

    4. whether the insurer's action is based on a violation of law, policy terms or conditions, or the insurer's underwriting standards;

    5. whether the insurer's action is based on a material misrepresentation; and

    6. any other information that is the basis for the insurer's action.

    (ii) The use of generalized terms such as "personal habits", "living conditions", "poor morals", or "violation or accident record" does

not meet the requirements of this paragraph.

    (iii) The Commissioner may not disallow a proposed action of an insurer because the statement of actual reason contains:

        1. grammatical errors, typographical errors, or other errors provided that the errors are nonmaterial and not misleading;

        2. surplus information, provided that the surplus information is nonmaterial and not misleading; or

        3. erroneous information, provided that in absence of the erroneous information, there remains a sufficient basis to support the action.

**Notice of intention to cancel policy for nonpayment of premium**
(d) At least 10 days before the date an insurer proposes to cancel a policy for nonpayment of premium, the insurer shall send to the insured, by a first-class mail tracking method, a written notice of intention to cancel for nonpayment of premium.

**Privileged nature of statement of actual reason**
(e) A statement of actual reason contained in the notice given under subsection (c) of this section is privileged and does not constitute grounds for an action against the insurer, its representatives, or another person that in good faith provides to the insurer information on which the statement is based.

**Protests to proposed action of insurer**
(f)(1) This subsection does not apply to an action of an insurer taken under subsection (d) of this section.

    (2) An insured may protest a proposed action of the insurer under this section by signing two copies of the notice and sending them to the Commissioner within 30 days after the mailing date of the notice.

    (3) On receipt of a protest, the Commissioner shall notify the insurer of the filing of the protest.

    (4) A protest filed with the Commissioner stays the proposed action of the insurer pending a final determination by the Commissioner.

    (5) The insurer shall maintain in effect the same coverage and premium that were in effect on the day the notice of proposed action was sent to the insured until a final determination is made, subject to the payment of any authorized premium due or becoming due before the determination.

**Review of protest by Commissioner**
(g)(1) Based on the information contained in the notice, the Commissioner shall:

    (i) determine whether the protest by the insured has merit; and

    (ii) dismiss the protest or disallow the proposed action of the insurer.

    (2) The Commissioner shall notify the insurer and the insured of the action of the Commissioner promptly in writing.

    (3) Subject to paragraph (4) of this subsection, within 30 days after the mailing date of the Commissioner's notice of action, the aggrieved party may request a hearing.

    (4) The Commissioner shall:

    (i) hold a hearing within a reasonable time after the request for a hearing; and

    (ii) give written notice of the time and place of the hearing at least 10 days before the hearing.

    (5) A hearing held under this subsection shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article.

    (6) At the hearing the insurer has the burden of proving its proposed action to be in accordance with the insurer's filed rating plan, its underwriting standards, or the lawful terms and conditions of the policy related to a cancellation, nonrenewal, or reduction in coverage, as applicable, and not in violation of § 27-501 of this title and, in doing so, may rely only on the reasons set forth in its notice to the insured.

**Actions taken by Commissioner upon conclusion of hearing**
(h)(1) The Commissioner shall issue an order within 30 days after the conclusion of the hearing.

    (2) If the Commissioner finds the proposed action of the insurer to be in accordance with the insurer's filed rating plan, its underwriting standards, or the lawful terms and conditions of the policy related to a cancellation, nonrenewal, or reduction in coverage, as applicable, and not in violation of § 27-501 of this title, the Commissioner shall:

    (i) dismiss the protest; and

    (ii) allow the proposed action to be taken on the later of:

        1. its proposed effective date; and

        2. 30 days after the date of the determination.

(3) If the Commissioner finds that the actual reason for the proposed action is not stated in the notice or the proposed action is not in accordance with § 27-501 of this title, the insurer's filed rating plan, its underwriting standards, or the lawful terms and conditions of the policy related to a cancellation, nonrenewal, or reduction in coverage, the Commissioner shall:

(i) disallow the action; and

(ii) order the insurer to pay reasonable attorney's fees incurred by the insured for representation at the hearing if the Commissioner finds that the insurer's conduct in maintaining or defending the proceeding was in bad faith or the insurer acted willfully in the absence of a bona fide dispute.

**Delegation of powers and duties of Commissioner**
(i) The Commissioner may delegate the powers and duties of the Commissioner under this section to one or more employees or hearing examiners.

**Appeals**
(j) A party to a proceeding under this section may appeal the decision of the Commissioner in accordance with § 2-215 of this article.

## Credits
Added as Insurance § 27-605 by Acts 1997, c. 35, § 2, eff. Oct. 1, 1997. Amended by Acts 1997, c. 634, § 1, eff. Oct. 1, 1997; Acts 2000, c. 124, § 1, eff. Oct. 1, 2000; Acts 2002, c. 553, § 2, eff. Oct. 1, 2002; Acts 2003, c. 21, § 1, eff. April 8, 2003; Acts 2005, c. 117, § 1, eff. Oct. 1, 2005; Acts 2006, c. 44, § 5, eff. April 8, 2006; Acts 2006, c. 350, § 1, eff. Jan. 1, 2007. Renumbered as Insurance § 27-613 by Acts 2006, c. 580, § 1, eff. Jan. 1, 2007; Acts 2009, c. 60, § 5, eff. April 14, 2009; Acts 2009, c. 379, § 1, eff. Oct. 1, 2009. Amended by Acts 2012, c. 66, § 1, eff. April 10, 2012; Acts 2014, c. 364, § 1, eff. Oct. 1, 2014.

Formerly Art. 48A, § 240AA.

## Footnotes

1         Transportation, § 11-101 et seq.

MD Code, Insurance, § 27-613, MD INSURANCE § 27-613
Current through all legislation from the 2016 Regular Session of the General Assembly in effect through June 1, 2016

**END OF DOCUMENT**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

© 2016 Thomson Reuters

Exhibit B

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD
P.O. BOX 946350
MAITLAND FL 32794-6350

# NOTICE OF NONRENEWAL OF INSURANCE

Named Insured & Mailing Address:

ACCESS LIMOUSINE SERVICE, INC.
4810 A. SAINT BARNABAS RD.
TEMPLE HILLS MD 20748

Producer: 5430524870000

KF&B, INC.
425 W. BROADWAY
P.O. BOX 29093
GLENDALE CA 91209

---

Policy No.:   4014162349
Type of Policy:   BUSINESS AUTO
Date of Expiration:   08/12/2013; 12:01 A.M. Local Time at the mailing address of the Named Insured.

We will not renew this policy when it expires. Your insurance will cease on the Expiration Date shown above.

---

The reason for nonrenewal is  CNA no longer underwrites this sub-class of business and KF&B, Inc no longer represents the insuring company.  The MCS 90 endorsement, if any, will cancel and not be renewed which will coincide with non-renewal of the policy.

If you wish to replace your policy, you may be eligible for automobile insurance from another insurer.  If you cannot obtain coverage from any other insurer, you may request insurance through the Maryland Automobile Insurance Fund.  Please contact your agent or broker for information concerning insurance through the Fund or contact the Maryland Automobile Insurance Fund at the following address or phone number: 1750 Forest Drive, Annapolis, MD 21401-4294, Phone: 410-269-8609 or 301-261-1913 or 800-492-7120.

If you fail to replace your automobile liability prior to the date of cancellation or expiration shown above, Maryland Law requires that uninsured motorist penalties be assessed and evidence of registration be surrendered to the Motor Vehicle Administration.  Failure to surrender the evidence of registration may result in suspension of current and future registration privileges.

You may make a written request for additional information regarding the reason(s) for termination as stated in this notice.  You must make your request within 30 days of the date of this notice.  We will provide a written response no more than 15 days after we have received your request.  Mail your request to:

National Fire Insurance of Hartford
333 S Wabash Ave
Chicago, IL 60604

Date Mailed:
24th day of June, 2013

*[signature]*

RICHARD A. SMITH

Named Insured

ACCT 3017217886
ACCESS LIMOUSINE SERVICE, INC.
4810 A. SAINT BARNABAS RD.
TEMPLE HILLS MD 20748

FORM# CN9697021524MD122006
ODEN 3.0.13.04a

Copy for Named Insured

MDCN1NONE APP
06072013MYNY
Page 1 of 1

## INSTRUCTIONS FROM THE MOTOR VEHICLE ADMINISTRATION

If required liability coverage on an automobile is being terminated and not being replaced, the registration plates must be returned to the Motor Vehicle Administration on or before the date the insurance policy expires or is canceled. Failure to return the registration plates may result in an uninsured motorist penalty fine which is assessed at a rate of $150 for the first 30 days and is increased by $7 each day thereafter until the insurance is replaced or the registration plates are returned. The uninsured motorist penalty fine is assessed per vehicle.

Exhibit C

## Access Limousine Service Inc

**From:** Access Limousine Service Inc [info@access-limo.com]
**Sent:** Friday, July 12, 2013 10:08 AM
**To:** 'tobryan@serviceins.com'
**Subject:** RE: Renewal

**Tracking:**

| Recipient | Read |
|---|---|
| 'tobryan@serviceins.com' | Read: 7/12/2013 10:29 AM |

We are actively working on the scores, coming this month in July we are anticipating a large decrease in the numbers

**From:** Tim O'Bryan [mailto:tobryan@serviceins.com]
**Sent:** Thursday, July 11, 2013 3:50 PM
**To:** 'Access Limousine Service Inc'
**Subject:** RE: Renewal

I have submitted to various carriers and waiting on their replies. I do know that your current carrier is no longer writing buses and the company that is replacing CNA will not be in a position to write Access based on the SMS scores and the conditional safety rating. I have asked Kevyan to work on getting that fixed asap.

Timothy L. O'Bryan, President
Service Insurance Agency, LLC.
6850 Catawba Lane
Richmond, VA 23226
1-800-444-0205 ext. 303
tobryan@serviceins.com

This email is intended for the addressee shown. It contains information that is confidential and protected from disclosure. Any dissemination or use of this transmission or its contents by unintended persons is strictly prohibited. If this email relates to placement of coverage through Service Insurance Agency, please note that no coverage will be bound and no changes without a written "Confirmation of Insurance", Binder, Endorsement or Reinstatement from our office. Coverage cannot be assumed if you do not receive one of the aforementioned notices.

**From:** Access Limousine Service Inc [mailto:info@access-limo.com]
**Sent:** Thursday, July 11, 2013 3:18 PM
**To:** tobryan@serviceins.com
**Cc:** tbrannan@serviceins.com
**Subject:** Renewal

Hello Tim,

Hope all is well! I was wondering if we have any news about the insurance renewal?

Best Regards,

1

Richard A. Intner, CPA, Member
Janine K. Stevens, CPA

Richard Intner & Associates, LLC
*Certified Public Accountants*

June 20, 2016

John Tremain May, Esq.
Padraic K. Keane, Esq.
Jordan Coyne LLP
10509 Judicial Drive, Suite 200
Fairfax, VA 22030-5117

RE:   Access Limousine Service, Inc. v. Service Insurance Agency, LLC
      United States District Court for the District of Maryland
      Case No.: 8:15-cv-03724-TDC

Gentlemen:

In connection with your request that I provide you with my opinion as to any damages the Plaintiff might have suffered in the above mentioned matter, this letter is my report.

It is my opinion that the Plaintiff did not suffer any damages as a result of the non-renewal of the insurance policy. Based on the information available, the Plaintiff was not profitable during the three years preceding the non-renewal (2010 through 2012). The loss in 2013, which is the year of the non-renewal, was actually smaller than each of the preceding years.

In forming my opinion I relied solely on the Plaintiff's income tax returns for the four years 2010 through 2013.

I will be preparing a chart which reflects a summary of the tax return information.

My qualifications are as shown on the attached Curriculum Vitae.

I have not authored any publications in the previous 10 years.

I have not testified as an expert at trial or in deposition in the last two years, and I do not recollect any testimony in the two years preceding that. I will verify that as soon as possible and supplement this report if necessary.

My compensation in this matter is at the rate of $400 per hour. I have billed and been paid $3,318 through the writing of this report.

I reserve the right to update this report as, if and when additional information becomes available.

Very truly yours,

Richard A. Intner

RAI/cam

25 Crossroads Drive, Suite 402
Owings Mills, MD 21117-5439
Phone: (410) 581-9800
Fax: (410) 581-9808
rintner@intnercpa.com
jstevens@intnercpa.com

Richard A. Intner
25 Crossroads Drive, Suite 402
Owings Mills, MD 21117
410-581-9800
e-mail: rintner@intnercpa.com

## CURRICULUM VITAE

## EDUCATION

University of Pennsylvania, ABA, 1969
Adelphi University, BS - Accounting, 1972

## PROFESSIONAL LICENSING AND DESIGNATIONS

Certified Public Accountant - State of New York, (1975), State of Maryland, (1976)
Certified Insolvency and Reorganization Accountant, 1993
Certified Valuation Analyst, 1995
Certified Fraud Examiner, 1995
Accredited in Business Valuations (AICPA), 2007
Certified in Financial Forensics (AICPA), 2008

## PROFESSIONAL AFFILIATIONS AND ACTIVITIES

American Institute of Certified Public Accountants
- Certificate of Educational Achievement in Business Valuations, 1994
Maryland Association of Certified Public Accountants
New York State Society of Certified Public Accountants
Association of Insolvency and Restructuring Advisors
National Association of Certified Valuation Analysts
- Standards Committee, 1996 - 2016
- Certification Board, 1997 – 2000
- Litigation Forensics Board, 2000 -2002
Association of Certified Fraud Examiners
American Bankruptcy Institute
Baltimore Estate Planning Council
- Director, 1997 – 1999

## PROFESSIONAL QUALIFICATIONS

Managing Member, Richard Intner & Associates, LLC, Certified Public Accountants, a personal service accounting firm founded in 1998 (successor to a firm founded in 1981) providing tax and cash management services and advice to a broad and diverse business and individual clientele, including those with complex tax issues and financially stressed situations, and litigation support to attorneys for determinations of cash flows, income levels, and various economic damages.

Expert witness qualified in federal bankruptcy and various state courts.

3/2016