**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

ACCESS LIMOUSINE SERVICE, INC.,

     Plaintiff,

     v.

SERVICE INSURANCE AGENCY, LLC and
TIMOTHY O'BRYAN,

     Defendants.

Civil Action No. TDC-15-3724

**MEMORANDUM OPINION**

Plaintiff Access Limousine Service, Inc. ("Access") has filed a negligence claim against Defendants Service Insurance Agency ("SIA") and Timothy O'Bryan (collectively, "Defendants") arising from Defendants' late notification to Access of its decision not to renew Access's insurance policy. This matter is before the Court on Defendants' Motion for Summary Judgment, ECF No. 21, filed on May 5, 2016 (the "First Motion for Summary Judgment"), and Defendants' Motion for Summary Judgment Regarding Plaintiff's Lack of Necessary Expert Witnesses, ECF No. 41, filed on August 12, 2016 (the "Second Motion for Summary Judgment"). The issues before the Court are (1) whether Access is precluded by judicial estoppel from bringing its negligence claim because it failed to schedule the claim in an earlier bankruptcy proceeding; and (2) whether Defendants are entitled to judgment as a matter of law because the Court has stricken Access's proposed damages expert. Both motions are briefed and ripe for disposition, and no hearing is necessary to resolve them. *See* D. Md. Local R. 106.5. For the reasons set forth below, both motions are DENIED.

## BACKGROUND

Access is a Maryland corporation that provides transportation services. In order to operate its business, Access is required to maintain a commercial automobile insurance policy. Between 1993 and 2013, Access fulfilled this requirement by maintaining a commercial automobile insurance policy administered by SIA, a Virginia-based insurance company. O'Bryan, SIA's owner, served as Access's broker and in that capacity was responsible for the renewal, adjustment, and administration of Plaintiff's insurance policy.

On May 30, 2013, Defendants provided Access with an application to renew its insurance policy, which was set to expire on August 12, 2013. Access returned the forms on May 31, 2013. Neither Defendant contacted Access again until August 7, 2013, when Defendants informed Access that they were unable to renew its policy and that the policy would be expiring in five days. Access had not expected that it would be unable to renew its insurance policy and could not obtain new insurance before the August 12, 2013 expiration date. Neither Defendant took any action to help Access extend the policy or procure a new one, and after the expiration date passed, Access was unable to operate its business because it lacked the required insurance coverage. Although Access secured alternative insurance coverage from another carrier within 90 days, it suffered "significant economic loss" in the meantime. Compl. ¶ 14, ECF No. 2.

## I. Access's Bankruptcy

On September 13, 2013, Access filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Maryland. *See* Voluntary Petition, First Mot. Summ. J. Ex. A, ECF No. 21-3. Access's Schedule of Personal Property, filed on October 8, 2013, stated that Access's assets included automobiles, vans, and other vehicles, some of which had been repossessed; approximately $13,300 in six different bank accounts; and assorted office

2

furnishings and computers. Next to the line for "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Access indicated that it had no such claims by placing an "X" in the space labeled "NONE." *See* Schedule B – Personal Property, First Mot. Summ. J. Ex. B, ECF No. 21-4. Keyvan Shokraei, Access's President, signed a "Declaration Concerning Debtor's Schedules" in which he stated under penalty of perjury that the schedules were true and correct to the best of his knowledge, information, and belief. Access filed an amended schedule on October 28, 2013, which again did not identify any legal claims as assets.

Access was never granted a discharge in bankruptcy. On January 31, 2014, the United States Trustee filed a Motion to Convert Case to Chapter 7 or, in the Alternative, to Dismiss the Case. In its Motion, the Trustee asserted that Access had failed to file required monthly operating reports, make required fee payments to the Office of the United States Trustee, provide information requested by the Trustee, and file a reorganization plan and disclosure statement. *See* Motion to Convert Case to Chapter 7 or, in the Alternative, to Dismiss Case, *In re Access Limousine Service, Inc.*, No. 13-25615, at 2-5 (Bankr. D. Md. Jan. 31, 2014), Dkt. No. 93.[1] The Trustee asserted that because Access had not "taken any affirmative steps to move this case toward confirmation," "the best interests of the estate and the creditors would be served . . . by converting this case to Chapter 7 or dismissing it." *Id.* at 5. Access filed an Objection denying the Trustee's assertions and submitted several of the missing monthly operating reports. Nevertheless, the bankruptcy court ordered the case dismissed and terminated the automatic stay on April 8, 2014.

---

[1] The Court takes judicial notice of filings in the bankruptcy case pursuant to Federal Rule of Evidence 201(b)(2).

3

## II.    Procedural History

On December 4, 2015, Access filed this suit for negligence against Defendants in the Circuit Court of Maryland for Prince George's County, asserting that Defendants caused Access to lose its mandatory insurance coverage by (1) failing timely to notify Access regarding the cancellation or non-renewal of its policy and (2) failing to maintain Access's policy or secure alternative coverage. Access asserts that Defendants are liable for $500,000 in damages for losses suffered during the period it was unable to operate because it was uninsured.

Defendants timely removed the matter to this Court and properly invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Access is a citizen of Maryland and Defendants are citizens of Virginia. In an Amended Answer filed on April 5, 2016, Defendants asserted the defense of judicial estoppel. On May 5, 2016, Defendants filed the First Motion for Summary Judgment. Access filed its Opposition to the Motion on May 23, 2016. Defendants filed a reply brief on May 25, 2016.

With the First Motion for Summary Judgment pending, the Parties proceeded to discovery. On June 7, 2016, Defendants filed a Motion to Strike Plaintiff's Expert Designations. While that motion was pending, on August 12, 2016, Defendants filed the Second Motion for Summary Judgment. Access filed its Opposition to the Second Motion on August 29, 2016. After a hearing on September 14, 2016, United States Magistrate Judge Charles B. Day denied the Motion to Strike as to Access's standard of care expert, but granted the motion as to Access's damages expert.

### DISCUSSION

In their First Motion for Summary Judgment, Defendants invoke the doctrine of judicial estoppel and argue that Access is barred from bringing this lawsuit because Access did not list

the negligence claim as an asset in its Chapter 11 bankruptcy Schedule of Personal Property. Access contends that judicial estoppel is unwarranted in this case because the omission was unintentional. In their Second Motion for Summary Judgment, Defendants assert that they are entitled to judgment as a matter of law because Access cannot prove the existence and amount of damages without its expert witness on damages, whose testimony has been stricken from the case. Access maintains that a damages expert is not required to prove loss of income during the period for which it was uninsured.

## I.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

5

## II.    Judicial Estoppel

Judicial estoppel is an "equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir. 1998). "As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided on its own specific facts and circumstances." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998).

The United States Court of Appeals for the Fourth Circuit has adopted a four-part test to determine when judicial estoppel should apply: (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than of law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently. *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir. 1998). While each factor must be satisfied in order to support application of judicial estoppel, the "determinative factor" is whether the party sought to be estopped "intentionally misled the court to gain unfair advantage." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). "Without bad faith, there can be no judicial estoppel." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007).

### A.    Judicial Estoppel in Bankruptcy

Defendants' theory is that Access's failure to list the negligence claim as an asset in the bankruptcy proceedings judicially estops Access from asserting the claim before this Court. The Fourth Circuit has recognized this form of judicial estoppel. *See Whitten v. Fred's, Inc.*, 601 F.3d 231, 241-42 (4th Cir. 2010) (declining to apply judicial estoppel because the debtor-plaintiff

had disclosed the claim), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013). Other circuits have specifically applied judicial estoppel to bar a civil lawsuit brought by a plaintiff who concealed a legal claim from creditors by failing to disclose it in a bankruptcy petition. *See, e.g., Cannon-Stokes v. Potter*, 453 F.3d 446, 448-49 (7th Cir. 2006); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319-21 (3d Cir. 2003); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001); *In re Coastal Plains, Inc.*, 179 F.3d 197, 213 (5th Cir. 1999); *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570, 571 (1st Cir. 1998). *But see Browning v. Levy*, 283 F.3d 761, 775-76 (6th Cir. 2002) (declining to apply judicial estoppel because of a lack of evidence of bad faith).

The rationale for applying judicial estoppel under these circumstances is that complete and honest disclosure of all of a debtor's assets is a "critical step" in the bankruptcy process. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). The Bankruptcy Code requires a debtor to include along with its bankruptcy petition a schedule of assets and liabilities. 11 U.S.C. § 521(a)(1) (2012). The Schedule of Personal Property used to list a debtor's assets requires debtors to include "all personal property . . . of whatever kind." *See* Schedule B – Personal Property, First Mot. Summ. J. Ex. B. The property of the estate is defined broadly to encompass "all legal or equitable interests of the debtor in property as of the commencement of the case," *see* 11 U.S.C. § 541(a)(1), including "all causes of action that could be brought by a debtor," *In re USinternetworking, Inc.*, 310 B.R. 274, 281 (Bankr. D. Md. 2004) (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). Thus, where a debtor-plaintiff attempts to circumvent its affirmative obligations under the Bankruptcy Code, conceal a potential claim from the bankruptcy court and its creditors, and seek recovery solely for its own

7

benefit, judicial estoppel may be an appropriate means to ensure the integrity of the bankruptcy process and prevent abuse of the bankruptcy court's protection.

### B.     Genuine Issue of Material Fact

According to Defendants, the application of judicial estoppel in this case is a straightforward matter because it is undisputed that Access failed to disclose its negligence claim on its Schedule of Personal Property during the bankruptcy proceedings. Indeed, the first two elements of judicial estoppel are plainly satisfied. There is no genuine dispute that the position taken by Access before the bankruptcy court—that it did not possess any legal causes of action— is inconsistent with the position it implicitly takes before this Court by pursuing a legal claim against Defendants. *See, e.g., In re Coastal Plains*, 179 F.3d at 210 (holding that the "inconsistent positions prong for judicial estoppel" was satisfied where "[b]y omitting the claims from its schedules and stipulation," the debtor-plaintiff "represented that none existed," yet later pursued claims in district court). Thus, the first prong is satisfied. There is likewise no genuine dispute that the second prong, requiring the position to be one of fact, rather than of law, is met. The existence of Access's legal claim is "factual subject matter that was not disclosed." *In re USinternetworking*, 310 B.R. at 283.

On the third prong, courts typically find that a bankruptcy court has "accepted" a debtor's assertion in its Schedule of Personal Property that it had no legal claims when it grants a discharge. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (finding that the bankruptcy court adopted the debtor-plaintiffs' position when it issued a discharge); *Hamilton*, 270 F.3d at 784 (holding that a bankruptcy court that has discharged debts, even if later reinstated, has necessarily accepted the debtor's assertions that it lacked potential legal claims).

Here, the bankruptcy court did not discharge Access from bankruptcy; rather it dismissed the bankruptcy petition following a motion that asserted that Access had failed to file required monthly operating reports, make required fee payments, and provide information requested by the Trustee. Where it does not appear that the contents of the Schedule of Personal Property played any role in the bankruptcy court's dismissal of Access's petition, there is a legitimate question whether the bankruptcy court "accepted" the prior position that it had no legal claims. *See Havird Oil Co.*, 149 F.3d at 292. *Cf. Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996) ("There is no evidence that the nondisclosure played any role in the confirmation of the plan or that disclosure of the potential claims would have led to a different result."). *But see Hamilton*, 270 F.3d at 784 (noting that a bankruptcy court "may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways" beyond discharge of debts). Although Defendants argue that the Trustee and the bankruptcy court might have been unwilling to dismiss the bankruptcy petition had they known of the potential claim, nothing in the record supports this assertion, particularly where the Trustee's motion did not address the size of the bankruptcy estate and focused solely on Access's failure to follow required procedures.

Regardless of whether that prong has been satisfied, neither the application of judicial estoppel nor a grant of summary judgment is appropriate at this time because a genuine issue of material fact remains on the fourth prong, whether Access acted "intentionally, not inadvertently." *Havird Oil Co.*, 149 F.3d at 292. Defendants argue that under *Calafiore v. Werner Enterprises, Inc.*, 418 F. Supp. 2d 795, 798 (D. Md. 2006), a debtor's failure to disclose a legal claim can only be inadvertent if the debtor (1) lacked knowledge of the existence of the claim and (2) had no motive to conceal it. Defendants argue that Access necessarily had

9

knowledge of the underlying facts for its negligence claim because it was aware of the loss of its commercial automobile insurance policy before it filed its Chapter 11 petition, and that motive has been established because "disclosing the claim would have added significant sums to the bankruptcy estate." First Mot. Summ. J. at 8, ECF No. 21.

The Fourth Circuit, however, has not adopted a *per se* rule that in cases involving nondisclosure of potential legal claims in bankruptcy, "intent" for purposes of judicial estoppel is conclusively established by evidence of knowledge and a possible motive. Even *Calafiore* did not adopt such a rigid stance. Rather, the court referenced the defendant's reliance on a case from the United States District Court for the Southern District of Mississippi, *Kamont v. West*, 258 F. Supp. 2d 495, 500 (S.D. Miss. 2003), in which such a rule was applied, and noted that a debtor-plaintiff "will usually be deemed to have had a motive to conceal" claims where the failure to disclose them would have added assets to the bankruptcy estate. *Calafiore*, 418 F. Supp. 2d at 798. Notably, the *Calafiore* court found only that to the extent the debtor-plaintiff knew of his claim and had a motive to conceal it, "it *would be reasonable* to find [him] judicially estopped" from pursuing such claims, and it stopped short of actually applying the doctrine and granting summary judgment. *Id.* at 799-800 (emphasis added).

Thus, although the existence of evidence showing that a debtor-plaintiff had knowledge of a claim and a motive to conceal may provide a basis for inferring intent, the Court does not agree that such a finding is necessarily required as a matter of law. Courts must apply judicial estoppel with caution, rather than with "inflexible prerequisites or an exhaustive formula." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001); *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995). To apply judicial estoppel reflexively simply because Access did not list its potential cause of action in its bankruptcy schedule would run afoul of the mandate

10

that each application of the doctrine be "decided upon its own specific facts and circumstances."
*See King*, 159 F.3d at 196. Even courts that have applied judicial estoppel in this context have
recognized that judicial estoppel is inappropriate where the evidence does not demonstrate the
debtor-plaintiff's bad faith. *See, e.g., Eubanks v. CBSK Fin. Gr., Inc.*, 385 F.3d 894, 897-98 (6th
Cir. 2004) (concluding that judicial estoppel was not warranted where the plaintiffs "evidenced
no motive or intention to conceal the potential claim" and presented evidence indicating that they
had attempted to inform the United States Trustee and the bankruptcy court of their claim); *Ryan
Operations G.P.*, 81 F.3d at 362 (concluding that it would be improper to apply judicial estoppel
where there was "no evidence" that the debtor-plaintiff omitted a legal claim from its bankruptcy
petition "in bad faith").

Here, it is not clear that Access "intentionally misled" the bankruptcy court "to gain an
unfair advantage." *See Lowery*, 92 F.3d at 224. Access has asserted facts that establish a dispute
on the question of intent. First, Access disputes the allegation that it knew it possessed a legal
claim at all. In his affidavit, Keyvan Shokraei, President of Access, stated that "it was not clear
to me that Access ha[d] a viable, legal cause of action against SIA and O'Bryan" at the time of
the bankruptcy filing, and that "[i]t was not until after the dismissal of the bankruptcy" that
Shokraei "learned that the claim against SIA was actionable." Shokraei Aff. ¶¶ 7-9, Opp'n Mot.
Summ. J. Ex., ECF No. 28-1. Because Access does not allege a straightforward breach of
contract claim but instead has offered an unconventional tort claim premised on the position that
SIA had a duty to disclose in advance its decision not to renew Access's insurance policy, it is
plausible that Access would not have identified such a claim immediately. Shokraei also asserts
that Access's lack of intent to mislead the bankruptcy court is evidenced by the fact that he
informed the Trustee of the circumstances leading to the bankruptcy, including the loss of

11

Access's commercial automobile insurance. *See Eubanks*, 385 F.3d at 898 (considering oral disclosures to the Trustee in determining that the debtor-plaintiff lacked an intent to deceive as required to apply judicial estoppel).

In addition, the timing of the lawsuit supports a lack of intent to mislead. Access's Chapter 11 petition was dismissed on April 8, 2014. Access did not file this lawsuit until September 21, 2015. The fact that well over a year passed between the end of the bankruptcy proceeding and the filing of this lawsuit distinguishes this case from those in which the court could infer intent based on the speedy turnaround from resolution of the bankruptcy case to the filing of a civil case. *See, e.g., Calafiore*, 418 F. Supp. 2d at 797 (observing that the plaintiff filed his lawsuit the same day he received a discharge in bankruptcy).

Finally, the fact that Access's Chapter 11 petition was dismissed because Access failed to make required filings raises further questions as to Access's intent. In the typical case where there has been a discharge of debts, creditors would be deprived of the potential proceeds from an undisclosed claim. *See, e.g., In re Coastal Plains*, 179 F.3d at 213 (finding that judicial estoppel was appropriate where the debtor-plaintiff "avoided paying its debts by filing [for] bankruptcy" under circumstances where the debtor-plaintiff could "sue on undisclosed claims and possibly recover windfalls . . . to the detriment of creditors"); *Payless*, 989 F.2d at 571 (affirming the application of judicial estoppel where the debtor-plaintiff concealed its claims and received a discharge through which it could "get rid of [its] creditors on the cheap" and possibly obtain "a windfall" by asserting the claims post-discharge). Here, however, following the dismissal of Access's Chapter 11 petition, Access's assets again became available to its creditors, along with any potential proceeds from a successful lawsuit. The fact that Access did not act diligently to take all necessary steps to obtain a bankruptcy discharge, and instead had its

claim dismissed in a manner that prevented a potential windfall in the event of recovery, may be indicative of a lack of intent to mislead. Thus, there is, at a minimum, a genuine issue of material fact on whether Access's failure to schedule the negligence claim was intentional.

The case law cited by Defendants does not alter this conclusion. In *Calafiore*, the court actually denied summary judgment, even though there were stronger indicia of intentional concealment of a claim because the debtor-plaintiffs received a complete discharge of their debts, then initiated a civil lawsuit based on the undisclosed claim the same day they received that discharge. *See Calafiore*, 418 F. Supp. 2d at 796-97, 802. In *In re USinternetworking*, there was "undisputed testimony" that the claim was deliberately omitted even though the debtor "had knowledge of the existence of the claim, knew the amount it claimed, had advised its Board, and, ultimately, had filed an action to recover the claim" in another jurisdiction. *In re USinternetworking*, 310 B.R. at 283. Finally, in *Letke v. Wells Fargo Home Mortgage*, No. RDB-12-3799, 2015 WL 6163517 (D. Md. Oct. 19, 2015), the plaintiff plainly knew she possessed a legal cause of action because her civil lawsuit was pending at the time she filed for bankruptcy, yet she omitted the claim from her Schedule of Personal Property and proceeded to receive a complete discharge. *Id.* at *2, *5-6.

In contrast, Access disputes that it knew it had a legal claim against Defendants, and the facts and circumstances in the record to date establish a genuine issue of fact whether Access intentionally concealed its negligence claim from the bankruptcy court or did so inadvertently or by mistake. Thus, the Court declines to apply the doctrine of judicial estoppel at this time. *See John S. Clark Co*, 65 F.3d at 27, 29 (holding that dismissal on the basis of judicial estoppel is improper "when the facts alleged to have prompted a prior, inconsistent position are in dispute"). The First Motion for Summary Judgment is denied.

### III.    Expert Witnesses

Defendants' Second Motion for Summary Judgment posited that their Motion to Strike Access's expert witnesses on the standard of care and damages was likely to be granted, and without these experts, Access would be unable to present sufficient evidence of the standard of care owed by insurance producers or the existence and amount of damages.  In its Order of September 14, 2016, the Court (Day, M.J.) denied the motion to strike the standard of care expert, so the motion for summary judgment as to that expert is denied as moot.

The Court, however, granted the motion to strike the testimony of Access's damages expert.  Defendants argue that proof of damages is a topic "beyond the ken of the average juror," so without the expert, Access will be unable to prove the existence or amount of damages allegedly suffered.  Second Mot. Summ. J. at 4, ECF No. 41.  In turn, Defendants argue that because damages is one of the essential elements of its negligence claim, they are entitled to summary judgment.  *See Jacques v. First Nat. Bank of Md.*, 515 A.2d 756, 758 (Md. 1986) (stating that to prove negligence, a plaintiff must show (1) a duty owed, (2) a breach of that duty, (3) that the breach of duty caused harm, and (4) damages).  Access counters that no expert is needed to prove damages in this case, because Access personnel can testify to the loss of certain long term contracts and provide evidence of lost income during the period it was uninsured.

Expert testimony is generally required when necessary to aid the factfinder in understanding complex or technical matters that are beyond the ken of the average layperson. *See, e.g., Schultz v. Bank of America, N.A.*, 990 A.2d 1078, 1086 (Md. 2010) (finding that expert testimony is often required to establish the standard of care owed by a professional).  *Accord Hall v. Sullivan*, 272 F. App'x 284, 288-89 (4th Cir. 2008) (applying Maryland law to determine that expert testimony was required to prove the standard of care in an attorney malpractice case);

*Osunde v. Lewis*, 281 F.R.D. 250, 261-62 (D. Md. 2012) (applying Maryland law and finding that expert testimony was required to prove cause of injury where there was "a complicated medical question"). It is not essential to produce expert testimony on matters that ordinary jurors would be aware of "as a matter of general knowledge." *Babylon v. Scruton*, 138 A.2d 375, 379 (Md. 1958) (holding that a jury did not require expert testimony to find that reinforcements on a concrete slab that broke and caused injury were inadequate). If a jury may reasonably reach a decision without the help of an expert, a party's failure to produce expert testimony will not amount to a failure to meet the party's burden of proof. *See, e.g., Ross v. Hous. Auth. of Balt. City*, 63 A.3d 1, 13-14 (Md. 2013) (stating that expert testimony was not required to show the link between a defendant's property and a plaintiff's childhood exposure to lead paint); *Virgil v. Kash N' Karry Serv. Corp.*, 484 A.2d 652, 656 (Md. Ct. Spec. App. 1984) (holding that expert testimony was not necessary to establish that an exploding thermos was defective).

The Court is not persuaded that proving the existence and amount of damages in this case requires the testimony of an expert. The concept that a business unable to operate due to a loss of insurance coverage would suffer lost contracts and lost income during the period of closure is within the general knowledge of average jurors. *See Kleban v. Eghrari-Sabet*, 920 A.2d 606, 611-13, 627 (Md. Ct. Spec. App. 2007) (reinstating a jury award based on a physician plaintiff's testimony about the "nature of damages," including lost income and a decrease in new patients, even though the trial court struck the plaintiff's expert witness on damages).

Defendants argue that Access's unsuccessful efforts to designate an accountant to serve as an expert proves that Access cannot show the existence of damages without one. But Access's recognition that an expert might be useful to the jury does not mean that Access cannot prove the existence of some damages without an expert. *See Ross*, 63 A.3d at 14-15 (holding

15

that summary judgment based on the lack of an expert was inappropriate where remaining lay testimony could create disputes of material fact); *Kleban*, 920 A.2d at 612-13, 627 (holding that the jury could "reasonably have found that compensatory damages were proper" based on the plaintiff's testimony).  The Second Motion for Summary Judgment is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendants' First Motion for Summary Judgment, ECF No. 21, is DENIED.  Defendants' Motion for Summary Judgment Regarding Plaintiff's Lack of Necessary Expert Witnesses, ECF No. 41, is also DENIED.  A separate Order shall issue.


Date:   October 19, 2016

THEODORE D. CHUANG
United States District Judge